FILED

02 SEP 30 AM 8:57

U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHWESTERN DIVISION

| | | |
|---|---|---|
| LARRY J. HILLMAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | CV 00-B-3575-NW |
| | ) | |
| PIPEFITTERS LOCAL UNION 760, | ) | |
| | ) | |
| Defendant. | ) | |

ENTERED

SEP 30 2002

# MEMORANDUM OPINION

This case is presently pending before the court on defendant's motion for summary judgment. (Doc. 18.) Plaintiff Larry J. Hillman, filed suit against Defendant Pipefitters Local Union 760, alleging that it had discriminated against him on the basis of his race in violation of Title VII (42 U.S.C. § 2000e-2(c)) and Section 1981 (42 U.S.C. § 1981). Plaintiff contends that, because of his race, (1) he was forced to work as a pipefitter, an allegedly more dangerous job, when defendant had referred him as a welder; (2) defendant did not refer him for certain jobs; (3) a contractor laid him off from work without regard for his seniority; and (4) defendant subjected him to a hostile work environment. (Doc. 11.) Defendant has moved for summary judgment on the grounds that there are no disputed issues of material fact and that it is entitled to judgment as a matter of law. (Doc. 18.)

The parties have fully briefed the motion for summary judgment and the court has heard oral argument. Upon consideration of the record, the submissions of the parties, the arguments of counsel, and the relevant law, the court is of the opinion that the motion for

1

summary judgment, (doc. 18), is due to be granted and plaintiff's claims are due to be dismissed.

## I. FACTUAL SUMMARY

Defendant, Pipefitters Local 760, is a labor organization with approximately 950 members that work in the plumbing and pipefitting trades in North Alabama. (Doc. 19, Ex. 1 ¶ 2.) Local 760 is the local union of the United Association of Journeymen and Apprentices of the Plumbing and Pipefitting Industry of the United States and Canada. (*See* doc. 19, Ex. 1, ex. A at 1.) Defendant operates a hiring hall through which it refers its members for work with employers that are signatories to collective bargaining agreements with defendant. (Doc. 19, Ex. 1 ¶ 2.)

Most union referrals to employers are made from the out-of-work list. (*Id.* ¶ 3.) Members of the union that are out of work contact defendant to have their names placed on the list; members are ranked on the list according to the date they notified defendant they were out of work. (*Id.*) Referrals are made from the top of the list, according to the qualifications required for the particular job. (*Id.*) As an exception to out-of-work list referrals, an employer can request a foreman by name and defendant selects the shop steward by name. (*Id.*) Charles Boyd, Business Agent, made the referrals at issue in this case. (Doc. 23, Ex. 8 ¶ 3.)

Defendant is a member of the Tennessee Valley Trades & Labor Council ["Council"], a council of building trades unions doing work for TVA and its contractors. (Doc. 19, Ex. 1, ¶ 2 & ex. B at 1.) As a member of the Council, defendant is a party to the Project

2

Maintenance and Modifications Agreement ("PMMA") with the Tennessee Valley Authority ["TVA"]. (*Id.*, ex. B at 1.) Pursuant to the terms of the PMMA, TVA contractors agree to abide by the "legal referral facilities maintained by the union(s) . . . and shall notify the union either in writing or by telephone when workers are required." (*Id.* at 7.) The contractors have the right to hire a member by name (as opposed to off the out-of-work list) that are "task qualified," which means that the member has special skills or previous experience required for the particular TVA job. (Doc. 19, Ex. 1 ¶ 7.) TVA contractors may call the foreman by name, defendant selects the shop steward, and the remaining positions are filled by referrals from the top of the out-of-work list. (Doc. 19, Ex. 1, ex. B at 7.)

TVA hired plaintiff, Larry J. Hillman, as a laborer in 1979. (Doc. 19, Ex. 4 at 22.) In 1980, defendant accepted plaintiff into its pipefitter apprenticeship program. (*Id* at 21-22.). Four and a half years later, he was certified as a journeyman pipefitter. (*Id.* at 21.) During these four and half years, plaintiff was employed by TVA. (*Id.* at 22.) Plaintiff has three certificates from the international union in specific welding skills. (*Id.* at 28-31.)

In July 1997, defendant referred some of its members to a project at TVA's Brown's Ferry Nuclear Plant for contractor, ADA Maintenance ["ADAM"], under the terms of the PMMA. (Doc. 19, Ex. 1 ¶ 11.) The project involved installation of piping around the facility. (Doc. 19, Ex. 3 ¶ 2.) Defendant referred plaintiff as a welder, and he passed the requisite welding test. (Doc. 19, Ex. 1 ¶ 11.)

Plaintiff contends that, despite his referral to the ADAM job as a welder, he was forced to work the job as a pipefitter. (Doc. 23, Ex. 7 ¶ 8.) Plaintiff contends that this job

3

was extremely hazardous because he was forced to be the sole pipefitter to drill holes into a three-foot concrete wall, which dissected into the existing hydrogen line at the TVA plant.[1] (*Id.*) As of September 1997, plaintiff was the only African-American on this job site. (Doc. 19, Ex. 2, ex. A.)

At various times prior to August 18, 1999, ADAM laid off white union members, while plaintiff was retained. (*Id.*) On August 18, 1999, all union members were laid off. (*Id.*)

On August 23, 1999, ADAM called defendant asking for three pipefitters. It asked for Ronnie Hargrove (white), as the foreman; Jeff Hammond (white), as the job steward; and Gaither Thigpen (white). (Doc. 19, Ex. 1 ¶ 11.) ADAM requested Thigpen by name because it considered him to be the most skilled pipefitter of those recently laid off. (Doc. 19, Ex. 2 ¶ 4.) Raymond Crosswhite, Business Administrator, told Christy Tucker, ADAM's employee making the request, that ADAM could call Hargrove as foreman by name and told her she could talk to Boyd about the other two named members she had requested. (Doc. 23, Ex. 3 at 178-79.) Boyd contends that he told Tucker she could not name the steward and that defendant would refer the highest, qualified member off the out-of-work list. (Doc. 19, Ex.

---

[1] Defendant has presented evidence which disputes this fact. Ronnie Hargrove, the foreman on the ADAM job, testified that there were no operational hydrogen lines in the areas where plaintiff was required to drill holes. (Doc. 19, Exh. 3 ¶ 3.) Also, he testified that plaintiff was not the only pipefitter drilling holes; in fact, most members on the jobs drilled holes at one time or another. (*Id.*) According to Hargrove, no member was assigned exclusively welding duties. (*Id.* ¶ 4.) Nevertheless, for purposes of summary judgment, the court has accepted plaintiff's version of his job duties and the fact that he was the only referred member performing such duties.

4

1, ¶ 11.) Boyd supposedly selected Hammond for the steward position, because he told Crosswhite to send Hammond as the steward. (Doc. 23, Ex. 3 at 179.) Also, Boyd handed Crosswhite a piece of paper with Thigpen's name written on it; so, Crosswhite sent Thigpen., thinking this was what Boyd intended. (*Id.* at 179-80.) Thus, defendant referred the pipefitters requested by ADAM by name. (*See* doc. 19, Ex. 2 ¶ 5.)

At the time of the ADAM referral, members with the appropriate welding certification on the out-of-work list, in order from the top were:

| | |
|---|---|
| 108. | Keith Huntley |
| 221. | Andy Rickard |
| 233. | Plaintiff |
| 234 | Ronnie Hargrove |
| 235. | Doug Childers |
| 236. | Gaither Thigpen |
| 237. | Jeff Hammond |
| 239. | David Fish |
| 240. | B.B. McAlpin |

(Doc. 19, Ex. 1, ex. E.) By referring Thigpen for the ADAM job, defendant skipped three white members on the out of work list – Huntley, Rickard, and Childers – and plaintiff, an African-American. Boyd admits that referring Thigpen was a mistake; however, he does not explain why such mistake was made. (Doc. 19, Ex. 1 ¶ 12.)

Plaintiff contends that Boyd has used a particularly distasteful racial epithet in the work place and that he is rumored to be a member of the Ku Klux Klan. (Pl.'s Mem. Br. at 3 (citing "Hillman Depo., p. 170, lines 10-16" and "Hillman Depo., p. 173 line 9; p. 175, line 11; p. 186, lines 18-22").) The pages of plaintiff's deposition cited for these propositions are not in the record before the court. (*See* doc. 19, Ex. 4.)

Defendant referred plaintiff for a job with GUBMK in October 1999. In November 1999, GUBMK laid off plaintiff while white union members were retained. (Doc. 19, Ex. 4 at 211-12, 214.)

Defendant has referred plaintiff to several jobs between November 1999 and the date of his deposition, August 25, 2001. *See id.* at 57-59, 216-23.

Plaintiff and other African-American union members complained to union officials – Boyd, Crosswhite, and Tommy Streit, President – about race discrimination in October 1999. Boyd, Crosswhite, and Streit told the African-American union members that they would look into their claims of race discrimination; however, there was no further discussion of the matter.[2]

### III. DISCUSSION

Plaintiff contends that defendant discriminated against him with regard to job assignments, job referrals, lay off, and his work environment because of his race, African-American.

Title VII prohibits a union from discriminating against its members on the basis of race. Specifically, section 2000e-2(c) provides:

It shall be an unlawful employment practice for a labor organization--

. . .

---

[2]Boyd considered the African-American members to be "hostile minorities." (Doc. 23, Ex. 3 at 181-82.) Crosswhite stated that they were not "hostile" to him and Streit. (*Id.* at 182.) Crosswhite states, "They [weren't] hostile to me. They [were] my friends." (*Id.*)

6

> (2) to limit, segregate, or classify its membership or applicants for membership, or to classify or fail or refuse to refer for employment any individual, in any way which would deprive or tend to deprive any individual of employment opportunities, or would limit such employment opportunities or otherwise adversely affect his status as an employee or as an applicant for employment, because of such individual's race, color, religion, sex, or national origin; or
>
> (3) to cause or attempt to cause an employer to discriminate against an individual in violation of this section.

42 U.S.C. § 2000e-2(c)(2)-(3)..

The parties agree that plaintiff's allegations of disparate treatment racial discrimination are subject to the allocations of proof described by the United States Supreme Court in *McDonnell Douglas v. Green*, 411 U.S. 792 (1973), and its progeny. (Def.'s Mem. Br. at 8; Pl.'s Mem. Br. at 8-9.)

### A. PIPEFITTER JOB ASSIGNMENT

Plaintiff contends that he was forced to perform the duties of a pipefitter, as opposed to a welder, at TVA's Brown's Ferry Nuclear Plant. He argues that he was the only African-American on the job site and, despite his qualifications, he was "forced to perform life threatening pipefitting jobs alone." (Pl.'s Mem. Br. at 11.)

In order to find defendant liable for plaintiff's pipefitter job assignment, plaintiff must produce some evidence that defendant "instigated or actively supported the discriminatory acts allegedly experienced by" plaintiff. *Anjelino v. New York Times Co.*, 200 F.3d 73, 95 (3d Cir. 1999)(citing *Carbon Fuel Co. v. United Mine Workers*, 444 U.S. 212, 217-18 (1979); *Philadelphia Marine Trade Ass'n v. Local 291, Int'l. Longshoremen's Ass'n*, 909 F.2d

7

754, 757 (3d Cir. 1990); *Berger v. Iron Workers, Local 201*, 843 F.2d 1395, 1429-30 (D.C. Cir. 1988)). The evidence does not support a finding that defendant "instigated or actively supported" the alleged discriminatory job assignment after it referred plaintiff to the ADAM job.

Therefore, defendant's motion for summary judgment is due to be granted as to plaintiff's claims based on his work assignment as a pipefitter.

**B.     REFERRAL ON AUGUST 23, 1999**

Plaintiff contends, after ADAM laid him off, he was not called back on August 23, 1999, and defendant skipped him on the list to refer a white union member that was lower than plaintiff on the out-of-work list. Defendant admits that plaintiff's name was skipped on the out-of-work list; however, it contends that skipping plaintiff's name on the out-of-work list was simply a mistake and not intentional race discrimination.

To establish a prima facie case of discrimination with regard to a "failure-to-refer" situation, plaintiff is required to show: "(1) [He] is a member of the protected class; (2) he is qualified for the jobs being referred, which includes being qualified under legitimate Union rules to appear in the 'out of work [list]'; and (3) he was not referred for jobs consistent with legitimate Union rules, or that . . . Union members [outside the protected class] were referred inconsistent with those rules." *Dimitropoulos v. Painters Union Dist. Council 9*, 893 F. Supp. 297, 300 (S.D. N.Y. 1995)(citing *Williams v. Lehigh Valley Carpenters Union*, 1992 WL 247291, *3 (E.D. Pa. 1992), *aff'd*, 993 F.2d 880 (3d Cir.), *cert. denied*, 510 U.S. 873 (1993)).

8

With regard to the referral for the ADAM job, the court finds that plaintiff has established that he is a member of a protected class, that he was qualified for referral, and that Boyd referred a union member outside the protected class inconsistent with defendant's rules. Therefore, the court finds that plaintiff has established a prima facie case of race discrimination with regard to the August 1999 referral to the ADAM job.

Defendant contends, as its articulated reason for not referring plaintiff, that it made a mistake in selecting a white member, ranked lower on the out-of-work list, for referral. Because defendant has articulated a non-discriminatory reason for not referring plaintiff, "the presumption of discrimination [created by plaintiff's prima facie showing] is eliminated, and the plaintiff must submit evidence showing that the articulated reason is pretextual. If pretext is established, summary judgment in favor of the defendant is generally inappropriate." *Walker v. Prudential Property & Cas. Ins. Co.*, 286 F.3d 1270, 1274 (11th Cir. 2002)(citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148 (2000); *Chapman AI Transport*, 229 F.3d 1012, 1025 n. 11 (11th Cir. 2000); *Combs v. Plantation Patterns*, 106 F.3d 1519, 1538 (11th Cir.1997)).

To establish that defendant's articulated reason is a pretext for race discrimination, plaintiff must –

> come forward with evidence, including the previously produced evidence establishing the prima facie case, sufficient to permit a reasonable factfinder to conclude that the reasons given by the [defendant] were not the real reasons for the adverse employment decision. If the plaintiff does not proffer sufficient evidence to create a genuine issue of material fact regarding whether each of the defendant['s] articulated reasons is pretextual, the [defendant] is entitled to summary judgment on the plaintiff's claim.

9

*Chapman*, 229 F.3d at 1024-25 (quoting *Combs*, 106 F.3d at 1528-29)(internal citations and quotations omitted).

Plaintiff may establish that an articulated reason is a pretext for race discrimination "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Carter v. City of Miami*, 870 F.2d 578, 584 (11th Cir. 1989)(quoting *Goldstein v. Manhattan Industries*, 758 F.2d 1435, 1445 (11th Cir. 1985)(citing *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 256 (1981))). If a plaintiff chooses to establish pretext by showing that his employer's proffered reason is unworthy of credence, he must attack that reason "head on and rebut it." *Chapman*, 229 F.3d at 1030. The plaintiff must offer evidence that "casts sufficient doubt on the defendant's proffered nondiscriminatory reasons to permit a reasonable fact finder to conclude that the employer's proffered 'legitimate reasons were not what actually motivated its conduct.'" *Combs*, 106 F.3d at 1538(quoting *Cooper-Houston v. Southern Ry. Co.*, 37 F.3d 603, 605 (11th Cir. 1994)). The "pretext analysis focuses on a narrow question: Would the proffered evidence allow a reasonable factfinder to conclude that the articulated reason for the decision was not the real reason?" *Walker*, 286 F.3d at 1276 (citations omitted).

The record contains evidence from which a reasonable jury could find that Boyd purposefully gave Thigpen's name to Crosswhite for referral to the ADAM job. (*See* doc. 23, Ex. 3 at 179-81.) Boyd says he told Crosswhite to send ADAM "the next welder with [proper certification];" Crosswhite says he did not hear Boyd tell him to send a welder off

the list. Crosswhite testified that Boyd gave him a piece of paper with Thigpen's name on it; so, Crosswhite sent Thigpen, the welder requested by ADAM.

The court finds that this is sufficient evidence that sending Thigpen to the ADAM job was not a mistake as asserted by Boyd. Rather, a reasonable jury could find that Boyd purposely selected Thigpen for referral and that he ignored the out-of-work list in making the referral. Thus, the court finds that plaintiff has demonstrated sufficient evidence upon which a reasonable trier of fact could determine that defendant's articulated reason for selecting Thigpen for the ADAM referral – that Boyd made an innocent mistake – was not the "real reason."

As additional evidence of pretext and racial animus, plaintiff contends Boyd has made racially derogatory comments. Comments by the decision-maker demonstrating racial animus can be considered by the court as evidence of a discriminatory intent. *See Ross v. Rhodes Furniture, Inc.*, 146 F.3d 1286, 1291-92 (11th Cir. 1998). However, although plaintiff argues in his brief that Boyd used a racial slur, testimony supporting this assertion is not in the record before the court. Statements of fact in plaintiff's brief, not in proper affidavit form, are not themselves evidence and cannot be considered on a motion for summary judgment in determining if a genuine issue of material fact exists. *Helmich v. Kennedy*, 796 F.2d 1441, 1443 (11th Cir. 1986); *Direct Media Corp. v. Camden Tel. and Tel. Co., Inc.*, 989 F. Supp. 1211, 1217 (S.D. Ga. 1997). Therefore, the court has not considered any alleged racially derogatory comments made by Boyd.

11

The court notes that evidence of a prima facie case of discrimination and pretext is generally sufficient to defeat a motion for summary judgment; however, in the uncommon case, such evidence may not be sufficient. *See Chapman*, 229 F.3d at 1025 n. 11 (citing *Reeves*, 530 U.S. at 148-49). The Supreme Court in *Reeves* recognized:

> Certainly there will be instances where, although the plaintiff has established a prima facie case and set forth sufficient evidence to reject the defendant's explanation, no rational factfinder could conclude that the action was discriminatory. For instance, an employer would be entitled to judgment as a matter of law if the record conclusively revealed some other, nondiscriminatory reason for the employer's decision, or if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred. To hold otherwise would be effectively to insulate an entire category of employment discrimination cases from review under Rule 50, and we have reiterated that trial courts should not treat discrimination differently from other ultimate questions of fact.

*Reeves*, 530 U.S. at 148 (internal citations and quotations omitted).

Therefore, the court has considered whether plaintiff has demonstrated that defendant's reason for not referring him for the ADAM job was pretext "– not because that is dispositive, but because *if* [defendant's] asserted justification for [not referring plaintiff was] pretextual, that could constitute circumstantial evidence that [defendant] intentionally discriminated against [plaintiff]." *Millbrook v. IBP, Inc.*, 280 F.3d 1169, 1175 (7th Cir. 2002). "In determining whether summary judgment . . . is appropriate in any particular case, the court should take into consideration a number of factors. Those factors include the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case and that

12

properly may be considered" on motion for summary judgment." *Hinson v. Clinch County Bd. of Educ.*, 231 F.3d 821, 831-32 (11th Cir. 2000)(quoting *Reeves*, 530 U.S. at 148-49)(internal citations and quotations omitted).

The court finds that plaintiff's evidence of a prima facie case and pretext, under the particular circumstances of this case, is not sufficient to allow a trier of fact to infer that the reason defendant did not refer plaintiff for the ADAM job was because he is African-American.

The record shows that ADAM requested Thigpen as the third pipefitter. Nothing in the record indicates that ADAM requested Thigpen because of his race. Also, the record shows that plaintiff and three qualified white union members were skipped by Boyd to reach Thigpen for the ADAM referral. The end result of sending Thigpen is that defendant referred to ADAM the three pipefitters it requested by name. A reasonable jury could find that this result was an honest mistake, as defendant claims, or that Boyd, deliberately and in violation of the union rules, referred the three pipefitters requested by ADAM, disregarding the out-of-work list. The court finds, however, the inference that Boyd did not refer plaintiff because of his race is unreasonable.

Therefore, the court finds that defendant's motion for summary judgment is due to be granted as to plaintiff's claim related to defendant's failure to refer to ADA Maintenance in August 1999, and such claim is due to be dismissed.

## C. OTHER JOB REFERRALS

In addition to the August 1999 ADA Maintenance job, plaintiff testified the he was not referred for a job at the Colbert Steam Plant that was filled by Ron McGregor (white) and numerous jobs for outage work at TVA's Brown's Ferry Nuclear Plant.

### 1. Colbert Steam Plant

As set forth above, in order to establish a prima facie case of discrimination, plaintiff must establish that he was qualified for the job at Colbert Steam Plant that was awarded to McGregor.

The record shows that, in February 2001, GUBMK, the contractor on the job, requested three referrals – a foreman by name,[3] an apprentice, and a "certified heavy wall welder with a master plumber's license." (Doc. 19, Ex. 1, ¶ 14 & ex. F.)   Plaintiff was a journeyman pipefitter, not an apprentice, and he was not qualified as a certified heavy wall welder with a master plumber's license. Therefore, the court finds that defendant's motion for summary judgment as to plaintiff's claim relating to the Colbert Steam Plant referral is due to be granted because plaintiff has not shown that he was qualified for the available jobs.

### 2. Brown's Ferry Outages

Defendant contends that plaintiff was not qualified to work the outages at Brown's Ferry because he was not "task qualified" or certified for the nuclear facility maintenance work. Defendant contends that federal law requires that certain maintenance jobs "be done

---

[3]GUBMK asked for John Benson, a white male.

14

only by pipefitters who are qualified on certain tasks." (Doc. 19, Ex. 1 ¶ 7.) Task qualification or certification was the responsibility of TVA, the employer, and not the defendant union. Plaintiff complains that defendant did not refer him for other jobs on which TVA certified a member pipefitter for the particular maintenance work.

Plaintiff admits that he was not qualified for the task-qualified jobs without the certification;[4] therefore, the court finds that defendant's motion for summary judgment is due to be granted as to plaintiff's claims relating to the referrals for the task-qualified jobs.

Plaintiff contends that defendant discriminated against him, at some earlier time, by not referring him to jobs in order that he may obtain "task qualifications." (Pl.'s Mem. Br. at 16.) However, he has not offered any evidence to indicate when such job opportunities were available, whether he was qualified at such time, and whether he should have been referred consistent with defendant's rules. Based on this lack of evidence demonstrating a prima facie case with regard to the referrals for jobs resulting in task qualification, the court finds that defendant's motion for summary judgment is due to be granted as to plaintiff's claims based on his non-referral to task-qualifying positions.

**D.      November Lay-Off from GUBMK Job**

---

[4]Plaintiff argues, "Mr. Hillman does not deny that he did not have the qualifications for some of these job referrals. Mr Hillman contends, however, that while white employees were given the job referrals, the white employees were also given certain 'task qualifications' with these job referrals. . . . Black union members, however, are not given the opportunity to obtain these task qualifications because the Union does not initially refer them out." (Pl.'s Mem. Br. at 16.)

15

Plaintiff contends that contractor GUBMK laid him off from a TVA job in November 1999, and other, less-senior white union members were retained. Under the terms of the PMMA, "[d]uring a layoff, the Contractor has the right to retain the employees of their choice without regard to any other criteria." (Doc. 19, Ex. 1, ex. B at 8.) Moreover, plaintiff has not demonstrated that defendant "instigated or actively supported" his layoff. *See Anjelino*, 200 F.3d at 95.

Therefore, the court finds that defendant's motion for summary judgment is due to be granted as to plaintiff claim related to his layoff by GUBMK in November 1999, and that such claim is due to be dismissed.

## E. HOSTILE WORK ENVIRONMENT/DISPARATE TREATMENT

Plaintiff has filed several affidavits of African-American union members who contend that defendant discriminated against them on the basis of their race and in retaliation for complaining about race discrimination. Plaintiff contends this evidence demonstrated that his work environment is hostile. (*See* Pl.'s Mem. Br. at 18.) Most of these affidavits contain allegations related to African-American members being skipped on the out-of-work list in favor of white members. (*See* Doc. 23, Ex. 2.) Without deciding whether defendant had a pattern or practice of preferring to refer white members, the court finds that this conduct does not support a claim of hostile environment/racial harassment because the conduct described, and of which plaintiff was aware, was not sufficiently intimidating or insulting to constitute actionable harassment. *See National R.R. Passenger Corp. v. Morgan*, ___ U.S. ___, 122 S. Ct. 2061, 2074 (2002) ("When the workplace is permeated with discriminatory

intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, Title VII is violated.")(internal citations and quotations omitted)

Therefore, the court finds that defendant's motion for summary judgment as to plaintiff's racial harassment/hostile environment claim is due to be granted.

## IV. CONCLUSION

For all of the foregoing reasons, the court is of the opinion that there are no material facts in dispute and defendant is entitled to judgment as a matter of law on all of plaintiff's claims. An order granting defendant's motion for summary judgment (doc. 18) and dismissing plaintiff's claims will be entered contemporaneously with this Memorandum Opinion.

**DONE** this ___30th___ day of September, 2002.

*Sharon Lovelace Blackburn*
**SHARON LOVELACE BLACKBURN**
United States District Judge